# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No.: 1:17CR00364-DAP-1 |
| Plaintiff, | : | |
| | : | **JUDGE DAN AARON POLSTER** |
| vs. | : | |
| | : | |
| **JESUS BEY,** | : | |
| | : | **DEFENDANT'S TRIAL BRIEF** |
| Defendant. | : | |

Now comes the Defendant, **JESUS BEY**, by and through his undersigned counsel and pursuant to the Court's Trial Order respectfully provides for the Court's consideration the Defendant's trial brief.

## I. STATEMENT OF THE FACTS

On January 25, 2017, the Defendant, Jesus Bey, attended the funeral of a dear family friend, Yvonne D. Jackson. The Defendant cared for Ms. Jackson like a second mother and was distraught over her death.

Following the funeral of Ms. Jackson, the Defendant attended a repass held at the Harvard Wine & Grill for family and friends to celebrate the life of Ms. Jackson.

The Defendant was joined at the Harvard Wine & Grill by his mother, Robbie Cayson, and Defendant's long-time friend, Catrina Gaston, both of whom knew Ms. Jackson and mourned her loss.

The Defendant was required to go through security upon entering the Harvard Wine & Grill. The Defendant possessed no firearm or illegal contraband and cleared security.

The Defendant's mother and the Defendant's long-time friend Catrina Gaston were told by a young woman outside the Harvard Wine and Grill that "a carload of men were looking to kill Jesus."

Neither the Defendant's mother or Ms. Gaston observed the vehicle referred to by the young woman.[1] The Defendant's mother and Ms. Gaston were very concerned about the reported "death threat" made about the Defendant as the Defendant had recently received threats attributed to Da'Montais Banks, who had a well-earned reputation for violence in the community in which they lived.[2]

Defendant's mother asked Ms. Gaston if she had her handgun with her. Ms. Gaston is 26 years of age, gainfully employed and has no prior criminal record. Some years earlier Ms. Gaston had obtained a firearm and a license permit to carry a concealed weapon. Ms. Gaston had her firearm on her and provided it to Defendant's mother prior to entering the Harvard Wine & Grill.

Ms. Cayson, Defendant's mother, knew and was good friends with the owner of Harvard Wine & Grill and was never searched by security upon entering the establishment. Defendant's mother and Ms. Gaston both told the Defendant about the

---

[1] The young African-American woman is seen outside the Harvard Wine & Grill during the relevant time period, on the surveillance video maintained by the restaurant and provided by the government to the defense in discovery.

[2] Prior to the January 25, 2017 incident, Da'Montais Banks was believed to be responsible for the murder and attempted murder of Gregory Norman, Vincent Swaby, Courtney Gautt, Dion Pratt and Anthony Mitchell.

"death threat" made concerning him and their fear that Banks and his "crew" were waiting outside to kill the Defendant. The Defendant, his mother and Ms. Gaston again looked outside the Harvard Wine & Grill but did not see any suspicious vehicle with men in the area.

As the Defendant's mother and Ms. Gaston were getting ready to leave the "repass" at the Harvard Wine & Grill, the Defendant again looked outside but did not see any vehicle with men looking to harm him. However, the Defendant wished to walk his mother and Ms. Gaston to their vehicles for safety purposes and was still very concerned that "a carload of men" were still in the area looking to kill him, including Da'Montais Banks.

The Defendant asked Ms. Gaston if she had her handgun with her and she acknowledged that she had given it to Defendant's mother prior to entering the "repass." The Defendant obtained Ms. Gaston's .40 caliber handgun from his mother for safety purposes as he escorted his mother and Ms. Gaston to their vehicles. The Defendant was still very concerned about Mr. Banks being in the area, with a "carload of men looking to kill" him.

As the Defendant was accompanying his mother and Ms. Gaston to their vehicles, a truck pulled up with individuals known to the Defendant whom inquired about the location of the repass for Ms. Jackson.

A 2009 Nissan Rogue then made a broad turn in front of the pick-up truck where the Defendant was standing and individuals inside the 2009 Nissan Rogue, including

Da'Montais Banks, fired multiple gunshots at the Defendant.[3] The Defendant then proceeded behind the truck and attempted to fire Ms. Gaston's handgun in self-defense. The gun, however, jammed and did not fire.

The Defendant then took shelter in an adjacent parking lot while the occupants of the pick-up truck proceeded to exchange multiple gun shots with the occupants in the 2009 Nissan Rogue. The Defendant retreated to the Harvard Wine & Grill where he obtained another handgun from a patron. By the time the Defendant exited the Harvard Wine & Grill, the gun shots had ceased, but Da'Montais Banks had escaped the vehicle and was still armed and in the immediate area and the threat to the Defendant was still very real.

The Defendant then proceeded to re-enter the Harvard Wine & Grill to determine if anyone was injured from the gun shots that were fired earlier. The Defendant exited the Harvard Bar & Grill, with caution, as Da'Montais Banks was still armed and in the area.[4] The Defendant proceeded to leave the area with a patron from the Harvard Wine & Grill and drove to Ms. Gaston's residence and after he safely arrived, returned the firearms to his mother.

## II. **DEFENSE OF JUSTIFICATION**

Under certain circumstances, the law permits a defendant to assert the defense of justification to excuse and permit the possession of a firearm or ammunition by a felon. In order to prevail at time of trial with the defense of justification, the defendant

---

[3] The DNA of Da'Montais Banks was found inside the 2009 Nissan Rogue and on the slide of a firearm discovered at the scene.

[4] All of the aforestated facts were recorded on the video surveillance maintained by the Harvard Wine & Grill which the government has acknowledged will be marked as a government exhibit.

must show, by a preponderance of evidence, the following from the evidence presented during the course of the trial:

 (A) First, that the defendant reasonably believed there was a present, imminent, and impending threat of death or serious bodily injury to himself or to another;

 (B) Second, that the defendant had not recklessly or negligently placed himself or another in a situation in which it was probable that he would be forced to choose the criminal conduct;

 (C) Third, that the defendant had no reasonable, legal alternative to violating the law;

 (D) Fourth, that the defendant reasonably believed his criminal conduct would avoid the threatened harm; and

 (E) Fifth, that the defendant did not maintain the illegal conduct any longer than necessary.

Preponderance of the evidence is defined as "more likely than not." The defendant must show from evidence admitted at time of trial that the five factors are more likely true than not true. *See*: United States v. Singleton, 902 F.2d 471 (6th Cir. 1990).

The Defendant anticipates that evidence will be admitted at trial to establish, by a preponderance of evidence, the following factors to establish the affirmative defense of justification.

 **1.** **The Defendant did not recklessly or negligently place himself or another in a situation in which it was probable that he would be forced to choose the criminal conduct.**

The evidence will establish that on January 25, 2017, the Defendant was attending the repass for a dear family friend, Yvonne Jackson. The Defendant did not possess a firearm or any illegal substance. The Defendant did not recklessly or negligently place himself in this situation; and, it certainly was not "probable" that he would be forced to choose to engage in criminal conduct at the repass.

**2. The Defendant reasonably believed there was a present, imminent, and impending threat of death or serious bodily injury to himself or to another.**

When the Defendant was informed by his mother and Ms. Gaston that "men in a car were looking to kill Jesus" he believed as did the Defendant's mother and Ms. Gaston that this was a very real "death threat." Who says something like this unless its true?

During the week prior to the repass, the Defendant had received a string of anonymous phone calls threatening to kill him which he attributed to Da'Montais Banks. Da'Montais Banks had a reputation as being a killer.

Shortly before the January 25, 2017 repass at the Harvard Wine & Grill, the Defendant found a tracking device on his vehicle which he attributed to being placed there by Da'Montais Banks. The reputation held by Da'Montais Banks as being a "killer" recently came to fruition when Mr. Banks was indicted for multiple counts of aggravated murder and attempted murder including the January 25, 2017 aggravated murder of Julius Claxton and the attempted murder of the Defendant. (*See*: November 9, 2017 indictment returned by the Cuyahoga County Grand Jury in the case of *State of Ohio v. Da'Montais Banks, Jr.*, Case No.: 622412-17-CR, attached). The jury was still deliberating at the time Defendant's trial brief was required to be filed.

### 3. The Defendant reasonably believed his criminal conduct would avoid the threatened harm.

At the time the Defendant left the repass with his mother and Ms. Gaston, it was reasonable to believe that arming himself with a firearm would avoid the "death threat" related to him. It was unlikely that a carload of men would proceed to harm Jesus if confronted with the presence of a lethal firearm. It is also reasonable to believe that if threatened with death, the presence of a lethal firearm "would avoid the threatened harm."

### 4. The Defendant had no reasonable legal alternative to violating the law.

At the time of the "threatened harm" the Defendant was at a repass for a dear family friend. Neither the Defendant, the Defendant's mother or Ms. Gaston actually observed the vehicle of men who were purportedly coming to harm the Defendant. Calling the police to report the "threatened harm" would be pointless as neither the Defendant, the Defendant's mother or Ms. Gaston could identify, or even describe the vehicle; and, did not see a vehicle with men looking to harm the Defendant when they were leaving the repass. Calling the police in the Harvard/Lee Road neighborhood concerning a "death threat" reportedly made from an unidentifiable vehicle no longer in the area would have been pointless.

The three individuals, the Defendant, his mother and Ms. Gaston, did have a very real and reasonable belief that a carload of men could be lurking in the darkness to kill the Defendant. For the safety of his mother, Ms. Gaston and himself, the Defendant armed himself with a firearm for safety purposes when walking his mother and friend to their vehicles in view of the "death threat" purportedly made concerning the Defendant.

### 5. The Defendant did not maintain illegal conduct any longer than necessary.

The Defendant did not go to the repass with a firearm. This is true even though the Defendant had received prior death threats from Da'Montais Banks and his "crew". While at the repass the Defendant was informed of a recent "death threat" which was imminent. In response, the Defendant momentarily maintained possession of a firearm for the exclusive and limited purpose of protecting his mother and Ms. Gaston while walking them to their vehicles, as they were leaving the repass.

As foretold, a carload of men with guns opened fire at the Defendant as he stood outside the repass. After Ms. Gaston's handgun failed to fire, the Defendant obtained a second firearm from a patron during the course of a "fire fight" between occupants of the 2009 Nissan Rogue and occupants of the black pick-up truck.

Once the Defendant exited the Harvard Wine & Grill with the second firearm, the "fire fight" had ceased, but Da'Montais Banks had escaped from the 2009 Nissan Rogue and was still in the area. The Defendant returned to the Harvard Wine & Grill to determine if anyone had been injured and proceeded to exit the Harvard Wine & Grill with caution as Da'Montais Banks and other members of his "crew" could still be in the area. The Defendant proceeded to the residence of Ms. Gaston and there met his mother to whom he gave the two firearms. Indeed, the Defendant knew he could not remain at Ms. Gaston's residence if the firearms remained there as he was a felon. While the Defendant knew Ms. Gaston owned one of the firearms, he was not in a relationship with Ms. Gaston at the time or living at Ms. Gaston's residence.

It was the Defendant's belief that neither Mr. Banks nor his "crew" knew the identify of Ms. Gaston and he would be safe there.

### III. EVIDENTIARY ISSUES ANTICIPATED AT TRIAL

It is anticipated by the defense that the government will contest the admission of evidence relevant to the defense of justification. It is also anticipated that the government will seek to exclude jury instructions from the Court relevant to the defense of justification.

The defense at this time does not know the basis upon which the government will assert its objections. Once the basis for the objections are stated to the fact specific objection made by the government, the Defendant will be able to respond with the legal basis for allowing the admission of the evidence relevant to the defense of justification and the jury instructions on the defense of justification.

Respectfully submitted,

| | |
|---|---|
| */s - Angelo F. Lonardo, Esq.* | */s - Joseph J. Lonardo, Esq.* |
| **YELSKY & LONARDO** | **JOSEPH J. LONARDO, ESQ.** |
| **BY: ANGELO F. LONARDO, ESQ.** | Ohio Reg. No. 0087373 |
| Ohio Reg. No. 0032274 | 323 Lakeside Avenue, West, Suite 450 |
| 323 Lakeside Avenue, West, Suite 450 | Cleveland, Ohio 44113 |
| Cleveland, Ohio 44113 | (216) 337-1650 – Telephone |
| (216) 781-2550 – Telephone | (216) 781-6688 – Facsimile |
| (216) 781-6688 – Facsimile | lonardo6@yahoo.com – Email |
| aflonardo@yelskylonardo.com – Email | |

Counsel for **JESUS BEY**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of July, 2018, a copy of the following was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s - Angelo F. Lonardo, Esq.*

**ANGELO F. LONARDO, ESQ.**