## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                   Case No. 1:17CROO364-DAP-1

vs.                                  Hon. Dan Aaron Polster

JESUS BEY,

      Defendant.

---

### DEFENDANT JESUS BEY'S
### SENTENCING MEMORANDUM

---

Defendant JESUS BEY, by and through his attorney of record, Michael V. Severo, Esq., hereby offers his sentencing position.

Defendant's position is based upon the attached memorandum, the presentence investigation report ("PSI"), and upon all other documents on file in this case, any oral or documentary evidence adduced at the time of the hearing, and arguments.

Dated: August 14, 2019          THE SEVERO LAW FIRM

/s/ *Michael V. Severo*

By: Michael V. Severo
Attorney for Defendant
JESUS BEY
155 N. Lake Avenue
Suite 800
Pasadena,  CA  91101
(626)844-6400
msevero@mvslaw.com

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On September 13, 2017, defendant JESUS BEY was charged in this court in a one-count indictment alleging that on January 25, 2017, having previously been convicted of felonious assault and other felonies, he possessed 10 rounds of .40 caliber ammunition bearing head stamp "Win 40 S&W," 1 round of .40 caliber ammunition bearing head stamp "Win 40 S&W," and 1 round of ammunition bearing head stamp "SIG 40 S&W," all in violation of 18 U.S.C. § 922(g)(1).

On November 1, 2018, following trial by jury wherein he was found guilty of the offense charged, the court sentenced him to a term of imprisonment of 78 months.  The court's sentence was predicated upon the premise that defendant's prior convictions for felonious assault, violation of Ohio Rev. Code § 2903.11(A)(1), were crimes of violence, a factor that caused the guidelines calculation to increase by approximately 10 levels.   Defendant appealed to the Sixth Circuit.

Thereafter, on January 3, 2019, the U.S. Circuit Court for the Sixth Circuit, sitting *en banc*, issued its opinion in *U.S. v. Burris*, 912 F.3d 386 (6th Cir. 2019) (*en banc*), ruling that Ohio's felonious assault and aggravated assault offenses under subsection (A)(1) were too broad to "categorically qualify as violent-felony predicates under ACCA and the Guidelines elements clauses." *Id.*

Because this court applied the enhancement in sentencing defendant, and upon the parties' joint motion, the Sixth Circuit remanded the case to this court for resentencing in accordance with *Burris*.

## STATEMENT OF FACTS

The court heard the trial in this case and is well acquainted with the facts. For the sake of completeness, suffice it to state that on January 25, 2017, while attending a repass, defendant was the victim of a shooting that took place outside the restaurant where the repass was being held.  In an attempt to defend the shooting, defendant, who had suffered prior convictions for felonious assault, possessed the ammunition as charged.

Much of the debate at sentencing and in prior proceedings centered on whether defendant possessed a firearm that jammed, causing him to eject the ammunition from the firearm.   Also in that debate, the parties discussed the reasons for defendant being involved in the shooting in the first place.

## THE PRESENTENCE REPORTS AND
## PRIOR SENTENCING PROCEEDINGS

As required by law, a presentence report was prepared by the Probation Department on three separate occasions.

The first report, disclosed on September 25, 2018, calculated the Guideline range using USSG § 2K1.1(a)(2).  That section provides that the base offense level for a defendant who is found guilty of 18 U.S.C. § 922(g)(1) and who has suffered two prior convictions of crimes of violence is 24.

Defendant's criminal history resulted in a score of 12 which establishes a Criminal History Category of V.

The resulting Guidelines range was thus 92 to 115 months.  See Docket 46, p. 13, ¶ 52.

The offense is a Class C felony, carrying a maximum statutory term of imprisonment of 10 years and between 1 to 3 years of supervised release.

At the sentencing hearing, the government requested an upward variance from the Guideline range.  It asked the court to impose the maximum 120 month statutory sentence.

Defendant, for his part, argued that the Guideline calculation was too high and, in essence requested a downward variance.

The court sentenced defendant to 6½ (78 months) years, thereby granting a downward variance.

The *Burris* decision and the consequent remand of this case generated a second and third PSR, disclosed on June 10, 2019 and revised July 11, 2019.  The second PSR calculated the base offense level as 14 and gave defendant a 2-level reduction for acceptance of responsibility.   The revised and reigning PSR removed the 2-level reduction and placed the base offense level at 14.  With a Criminal History of V, the resulting guideline range is 33 to 41 months.

## THE COURT SHOULD APPLY A
## 2-LEVEL REDUCTION FOR
## ACCEPTANCE OF RESPONSIBILITY

The question of whether defendant is entitled to receive credit for acceptance of responsibility has dogged the sentencing proceedings from the first time.

At the original sentencing hearing, defense counsel forcefully argued that defendant should be entitled to receive the appropriate reduction for accepting responsibility as provided by USSG § 3E1.1(a), despite having put the government to its proof by exercising his constitutional right to trial by jury.  The court declined the invitation.

However, the decision to go to trial was not one that was lightly made. Defendant – faced with a Hobson's choice – take a 10-year sentence or go to trial, was required to exercise a constitutional right that he did not necessarily want but the "take or leave it" nature of the plea offer demanded.   At sentencing, the court and defense counsel engaged in the following exchange, as reported in Docket #61,, starting at p. 10 through page 11:

> THE COURT: ... But the key, the key was - ... well, the only thing in dispute was whether or not Mr. Bey possessed that ammunition. And he vigorously defended that.
>
> MR. ANGELO LONARDO:  We did defend that, Judge.
>
> THE COURT:  Which was fine.

> MR. ANGELO LONARDO:  Well, we defended that and we were –
> the burden was placed on going to trial on this.  Attempts were made
> to resolve this by pretrial, Judge, *but pleading to a 10-year sentence*
> *--*
>
> THE COURT:  All right.
>
> MR. ANGELO LONARDO: -- *that's why we went to trial.*
>
> (Italics added.)

Certainly the entire set of proceedings leading up to the November 1, 2018 sentencing hearing was boldly colored by a Guidelines calculation that approached the maximum 10 year term of imprisonment and that resulted in the government demanding, both in pretrial negotiations and at sentencing.

But *Burris* changed all that.  How would the case have resolved had the Guidelines calculation were as it is post-*Burris*?

In his allocution at sentencing, defendant provided a glimpse of "what-might-have-been" had the current application of the Guidelines been the norm.

He told this court:

> You spoke and said I never accepted responsibility.  I believe that
> throughout the whole situation I have always have [sic], like, begged
> Angelo [Lonardo] to also, like, ask [AUSA Kelly Galvin], like, put an
> offer, like I was willing to do three years.
>
> I know getting a gun from my girlfriend to protect my family [sic] life
> and my life was illegal, but that's a tough decision to make.  Like, I

took the threat seriously and it was really that I didn't want – I didn't want to die....

I just feel that doing – doing ten years for not dying is just too much.  I asked can I do three years for the simple fact that I did carry a gun.  I put that in front of them. They never even responded and said "No."  They just ignored it....

But I did go to trial and you're right, that's not accepting responsibility, but I do want to make it clear that I do accept my responsibility and whatever time you do give, Your Honor, I'm going to do it.  I'm going to try to become a better man for my children as well.

In a recent letter to this court, Mr. Bey reiterated his position.  Attached as Exhibit A hereto, the letter, discussing the circumstances of pretrial plea negotiations, states:  "I understand that I broke the law, even if it was only to save me, my mother and girlfriend [sic] lives.  I asked the Government could I please do 30-37 months.  The Government completely ignored this offer....  My guideline advisory range is now 33-41 months, my offense level 14.  This is within the exact range that I tried to plead to before any of this occurred...."

Defendant is clearly accepting responsibility for having broken the law and would not have exercised his constitutional right to trial had the Guidelines calculation been what they are today.

## THE GUIDELINE CALCULATION

In arriving at its sentence, the court is required to engage in parallel analyses.  That is, the court must ascertain correctly the sentencing range prescribed by the Guidelines, as well as do a complete analysis based on all the section 3553(a) factors.  *U.S. v. Booker*, *supra; U.S. v. Kimbrough*, *supra;* and *U.S. v. Gall*, *supra. U.S. v. Cantrell*, 433 F.3d 1369 (9th Cir. 2006). See also 18 U.S.C. § 3553(a)(4).

There does not seem to be a dispute between the parties that the Guidelines are as stated in the Revised PSR dated July 11, 2019.

Defendant contends, however, that the circumstances attendant to the pretrial negotiations, the then-existing Guideline range, the January 2019 *Burris* decision, all make for a Guidelines calculation as follows:

|  |  |  |
|---|---|---|
| Base Offense Level | 14 | U.S.S.G. § 2K2.1(a)(6) |
| Acceptance of Responsibility | -2 | U.S.S.G. § 3E1.1(a) |
| TOTAL OFFENSE LEVEL | 12 |  |

Applying a Criminal History V, the resulting guideline range is 27-33 months.

Should the court deny a 2-level reduction for acceptance of responsibility, his Guidelines range will be 33 to 41 months.

## AN ANALYSIS OF THE FACTORS IN 18 U.S.C. § 3553(a) DEMONSTRATES THAT THE DEFENDANT SHOULD BE SENTENCED TO NOT MORE THAN 33 MONTHS

As a result of the dual majority opinion in *U.S. v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the final sentencing analysis is done under 18 U.S.C. § 3553(a).  As a component of that analysis, the range provided in the Guidelines is considered by the court, but only on an advisory basis.  *U.S. v. Booker*, *supra,* opinion by Breyer, J. at page 756.

In determining the sentence in an advisory guideline regime, this court is obligated to follow the mandate of § 3553(a), i.e., to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the sentencing objectives of subsection (2).  In imposing the sentence, the court then looks to the various factors in § 3553(a)(1) through (a)(7).

In its entirety, § 3553 provides as follows:

> (a) Factors to be considered in imposing a sentence. *The court shall impose a sentence sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider-
>
>> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>> (2)  the need for the sentence imposed-
>>
>>> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> (B)  to afford adequate deterrence to criminal conduct;

9

       (C)     to protect the public from further crimes of the defendant; and,

       (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for-

       (A)     the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines-

           (i)     issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such Guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

           (ii)    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

       (B)     in the case of a violation of probation or supervised release, the applicable Guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of the title 28, United States Code, taking into account any amendments made to such Guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5)     any pertinent policy statement-

(A)  issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by the act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B)  that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

In assessing these factors, neither the statute nor *Booker*, suggests that any one factor is more important, or to be given greater weight, than any other.

As seen in the wording of § 3553, the overriding principle in sentencing is that the court is required to impose a sentence "sufficient, but not greater than necessary," to comply with the express purposes of sentencing found at subsection (a)(2), to wit, retribution, deterrence, incapacitation, and rehabilitation.

One court has been led to express that this overriding principle is not just a factor to be considered, but rather, it sets a limit on the sentence that the court may impose.  *United States v. Denardi*, 802 F.2nd 269, 277-77 (3rd Cir. 1989)(Becker, J. concurring in part, dissenting in part).

In *Kimbrough v. United States*, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), the Supreme Court specifically highlighted the importance of the "sufficient, but not

greater than necessary" mandate of § 3553(a).  It held that "under *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only.... A district judge must include the Guidelines range in the array of factors warranting consideration.  The judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing," to wit, retribution, deterrence, incapacitation, and rehabilitation.

On the same day that *Kimbrough* was decided, the Court also issued its opinion in *Gall v. United States*, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).  The Court in *Gall* also reiterated the principle that the Guidelines are not mandatory, "and thus the 'range of choice dictated by the facts of the case is significantly broadened.  Moreover, the Guidelines are only one of the factors to consider when imposing sentence...."  *Id.* at page 602.

Recognizing that imprisonment is not a proper method of achieving rehabilitation, see 18 U.S.C. § 3582, some courts have found abhorrent any sentence that does not promote such rehabilitation.  See *U.S. v. Peterson*, 363 F.Supp.2d 1060, 1062 (E.D.Wis.2005).

This notion is central to the recently enacted "First Step Act of 2018" ("the FSA").

The important principle to be gleaned from the wording of the statute is that all of the factors set forth in Section 3553 are to be analyzed with a view towards imposing a sentence that is "not greater than necessary" to comply with the four purposes of sentencing.  This is reinforced by the FSA with its emphasis

12

on rehabilitation through imprisonment programs designed to reduce the rate of recidivism.

### A.    Nature and Circumstances of the Offense (§ 3553(a)(1))

The nature and circumstances of the offense are well known to the court. As noted earlier, it appeared that defendant did not possess the offending ammunition until he found out that his life, and those of his mother and girlfriend, were threatened.   The notion, advanced by the government in its position, that he should have never been in a position to be the target of a "hit" by apparent gang members invites a great deal of speculation and some measure of crystal ball gazing that this court should not entertain.

The fact remains that defendant is guilty – and admits – that he offended.

### B.    History and Characteristics of the Defendant (§ 3553(a)(1))

Defendant was 24 years old at the time of this offense.

His father and mother were never married.  His father died when defendant was just 3 years old.   His best recollection of a father figure comes from a relationship that his mother had with another man.   As gleaned from the PSR, it appears defendant never had proper guidance as a youth.  He was raised in a predominantly African American neighborhood where drugs and violence were prevalent.   In his neighborhood, as a child, he witnessed shootings.

It is not surprising then that defendant came into contact with police at a young age and has been convicted of three felonies.   Of note is the fact that none of his convictions are related to any gang activity.

13

### C.     Section 3553(a)(3): The Kinds of Sentence Available

The offense of conviction permits sentences that range from probation to

10 years in prison.

### D.     Need for Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense.

18 U.S.C. § 3553(a)(2) provides the four sentencing objectives thus:

> "(2) the need for the sentence imposed--(A) [RETRIBUTION] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;(B) [DETERRENCE] to afford adequate deterrence to criminal conduct;(C) [INCAPACITATION] to protect the public from further crimes of the defendant; and(D) [REHABILITATION] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner...."

a. RETRIBUTION. While Mr. Bey's conduct is certainly serious, it cannot

be said to be the most serious offense conduct among the entire ambit of

narcotics trafficking offenses.   For offenders that demonstrate the kind of

humanity, good morals and acceptance of responsibility, and who also establish

the type of catastrophic consequences that attach to his actions, a 33-month

suggestion appears to be quite sufficient.

b. DETERRENCE. It is beyond dispute that the substantial curtailment of

liberty associated with a 33-month sentence of imprisonment and ensuing

supervision, separation from his family, the ignominy of yet another felony

conviction and all other consequences attendant to said conviction, should serve

14

as a deterrent to anyone who even entertains the conduct for which defendant stands convicted.

c. INCAPACITATION.   Defendant has been in custody and thus incapacitated for nearly 3 years.   Given the offense of conviction, a 33-month sentence appears to be sufficient incapacitation.

d. REHABILITATION.  Defendant will be subject to a term of supervised release that will aid in his rehabilitation, further his education and allow him to seek proper employment.

## CONCLUSION

An analysis under  § 3553(a), including the Guidelines calculation compel a conclusion that the court, in achieving the sentencing statute's overarching mandate, a sentence of 33 months is sufficient but not greater than necessary to achieve the statute's objectives.

Dated: August 14, 2019                    THE SEVERO LAW FIRM

By:  /s/ *Michael V. Severo*

Michael V. Severo
Attorney for Defendant

15