IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:17CR364 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN A. POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| JESUS BEY, | ) | RESPONSE IN OPPOSITIOBN TO |
| | ) | DEFENDANT'S MOTION FOR |
| Defendant. | ) | MODIFICATION OF DETENTION |
| | ) | ORDER |

Now comes the United States of America, by and through counsel, Justin E. Herdman, United States Attorney, and Kelly L. Galvin, Assistant United States Attorney, and respectfully submits the following Response to Defendant's Motion for Bond. For the reasons stated herein, the United States of America requests that this Court deny Defendant's Motion.

**I.      BACKGROUND**

On August 21, 2019, Bey was resentenced to 28 months imprisonment. (R. 88: Judgment, PageID 1480). He was eligible for release based upon credit for time served and was placed on 3 years supervised release beginning August 26, 2019. Within 6 weeks, Bey tested positive for methamphetamine and amphetamine. In just under 4 months' time, he was arrested for driving under suspension. A loaded Glock pistol was also located in the vehicle. The U.S. Probation Office filed a report which indicated Bey had the following violations:

1. **Constructive Possession of a Firearm**: On 01/11/2020, Mr. Bey was the driver of a vehicle in which a firearm was recovered by law enforcement.

2. **Associating with a Known Convicted Felon**: On 01/11/2020, Mr. Bey was associating with Bryant Cayson, a known convicted felon.

3. **New Law Violation**: On 01/11/2020, Mr. Bey was cited for Driving Under Suspension.

4. **Illicit Substance Use**: On 10/01/2019, Mr. Bey tested positive for Amphetamines and Methamphetamine. The test was confirmed positive by Alere Toxicology on 10/09/2019.

Based upon the violations, a warrant was issued for his arrest. Bey was arrested on January 15, 2020, and an initial appearance was held on January 16, 2020. This Court ordered Bey detained pending a final revocation hearing. That hearing is currently scheduled for May 12, 2020.

On April 8, 2020, Bey filed a motion requesting a bond pending the final revocation hearing. (R. 103: Motion, PageID 1549). In his motion, Bey cites that "the State of Ohio is in the midst of a Coronavirus pandemic and individuals incarcerated face a significantly higher risk of contamination by the Coronavirus than non-incarcerated individuals." Id. In the alternative, he suggests a transfer of his supervision to another district as a solution.

## II.     LAW AND ARGUMENT

A detention hearing may be reopened only after a "judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). One factor the court may consider is Defendant's "physical and mental health." 18 U.S.C. § 3142(g)(3)(A). The "physical and mental health" clause does not contain a provision for speculative or possible future conditions. Id. Notwithstanding the COVID-19 outbreak, this factor does not weigh heavily, if at all, in favor of Defendant's release. According to the Ohio Department of Rehabilitation and Correction, there are no confirmed cases at the Northeast Ohio Correctional Center (NOCC) as of April 12, 2020. See https://drc.ohio.gov/  Bey is not seeking

release based on his *actual* "physical and mental health," but solely on the possibility that his health is at risk.

Title 18, United States Code, Section 3143(a) applies to convicted defendants who are seeking release pending sentence. The relevant part of that statute reads,

"(2) The judicial officer *shall* order that a person who has been found guilty of an offense in the case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless—

(A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

(ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." (emphasis added).

As Bey has failed to establish that his case falls under one of the exceptions listed in § 3143(a)(2), the Court must order his continued detention.

    A.    <u>COMPREHENSIVE PRECAUTIONARY MEASURES HAVE BEEN INSTITUTED BY THE U.S. MARSHALS SERVICE, BUREAU OF PRISONS, AND NOCC TO AVOID A COVID-19 OUTBREAK</u>

Even if the Court determines that it is appropriate to reopen the issue of detention, Bey's concern about *possibly* getting sick is not a valid basis for release. He claims that he is now at risk of contracting COVID-19 while he is incarcerated. Significant steps have been taken to protect him and other inmates. The Federal Bureau of Prisons, U.S. Marshals Service, and

NOCC have established a comprehensive set of precautionary measures to limit the risk of COVID-19 transmission into and inside NOCC.[1] NOCC is committed to providing all necessary precautionary measures and supportive therapies to avoid an outbreak of COVID-19, including taking all of the preventative actions advised by the Centers for Disease Control and Prevention (CDC) and the World Health Organization.

    1.    <u>The U.S. Marshals Service has set measures in place in response to COVID-19</u>

Persons entering the U.S. Marshals Service cell block are now subject to the following screening.

- **Cellblock screening of arrestees on intake**
    - Upon intake, arrestees should be screened for flu-like symptoms, *particularly fever* (use a forehead no touch thermometer, if available), *cough and difficulty breathing*.
    - Arrestees presenting from another agency with flu-like symptoms should not be accepted from the arresting agent until they have been examined and medically cleared.
    - If flu-like symptoms are present and personnel need to be within 6 feet of the arrestee:
        - **Personnel** (follow the below order of the bulleted list to don protective gear; reverse to take off except for the N-95 mask which comes off last)**:**
            - **Thorough handwashing** is required before and after prisoner handling
            - Use a **disposable isolation gown or single use/disposable coveralls\***
          *\*Note:* If unable to wear a disposable gown or coveralls, ensure duty belt and gear are disinfected after contact with the arrestee.
            - Don an approved and **fit-tested N-95 mask**
            - Use a **face shield** that fully covers the front and sides of the face **or goggles** for eye protection
            - Use **disposable non-sterile gloves.** Remove and put on new gloves for each new, symptomatic arrestee.

---

[1] Although NOCC is a facility for federal pre-trial detainees, according to Supervisory Deputy U.S. Marshal David Kasulones, NOCC must meet the requirement of the State of Ohio Department of Corrections and Rehabilitation. Ohio Department of Rehabilitation and Corrections likewise has adopted measures and protocols. *See*, https://www.drc.ohio.gov/Family/COVID-19-UPDATES

4

- **Arrestee:**
  - Put on a disposable **surgical mask**
  - **Isolate in a single cell or negative air pressure cell**
- **Contact** a healthcare professional for a further health evaluation.

  o Use similar precautions during prisoner transport, Court productions, etc.

- **Court production of prisoners with flu-like/COVID-19 symptoms**

  o Prisoners with flu-like symptoms should not appear in Court.
  o If the Court mandates a production, screening and prisoner/personnel precautions are the same as described above. The District may request the assistance of POD Office of Medical Operations (OMO) staff to help explain to the Court public health concerns.

- **Prisoner movement in detention facilities affected by suspected or confirmed COVID-19**

  o Prisoner movement should not take place within 14 days after last exposure to a suspected/confirmed case OR if less than 24 hours have elapsed since symptom resolution (without medications), unless necessary for medical reasons.
  o While the USMS cannot mandate detention facilities follow CDC clinical management guidance, correctional and detention facilities are strongly encouraged to follow it.

- **Reporting of suspected and/or confirmed COVID-19 cases**

  o Districts should report information regarding <u>quarantines</u> of USMS prisoners with suspected or confirmed COVID-19 disease to POD/OMO staff at (703) 740-8417 and include the following information:

    - Name of detention facility,
    - Number of prisoners affected (either ill or in quarantine), and
    - Number of individual facility housing units closed to prisoner movements.

- **If staff develop** symptoms of a lower respiratory illness (e.g., fever, cough, chills, body aches, sore throat, headache, diarrhea, nausea/vomiting, and runny nose) within 14 days of encountering a prisoner with risk factors, they should be evaluated by their healthcare provider immediately <u>and</u> before returning to work.[2]

---

[2] Information provided by Anthony Keffer, Supervisory Deputy U.S. Marshal, Northern District of Ohio.

Further, Supervisory Deputy U.S. Marshal Keffer, advised that all contractors must take part in these safeguards, including Northeast Ohio Correctional.

2. <u>Measures Put in Place at NOCC</u>

CoreCivic, the operator of NOCC, has provided the following information in connection with its response to COVID-19, stating:

> Since coronavirus was first detected in the United States, we have taken extra steps to inform and educate everyone in our facilities about prevention measures such as: regular hand washing, covering coughs and sneezes, and not touching one's eyes, mouth or nose. We are working closely with our government partners to coordinate our efforts, and we have taken significant steps to ensure we are well supplied, trained and prepared to manage COVID-19.[3]

CoreCivic has further stated, in connection with implementation of current guidelines in response to COVID-19 at its facilities, stating:

> Implemented current guidelines from the CDC and World Health Organization for COVID-19 at all CoreCivic facilities.
>
> • Revised policies and procedures to include best practices for the prevention and handling of novel coronavirus;
>
> • Purchased COVID-19 testing kits;
>
> • Communicated best practices for personal hygiene to prevent the spread of the disease;
>
> • Urged employees to stay home if they are ill and expanded PTO policies for sick employees or those caring for ill family members;
>
> • Developed plan to separate high-risk individuals in our care who are more susceptible to COVID-19;
>
> • Worked closely with our government partners to suspend visitation at facilities as necessary;
>
> • Secured additional stores of personal protective equipment.[4]

---

[3] https://www.corecivic.com/en/corecivic-statement-on-covid-19-prevention

[4] https://www.corecivic.com/hubfs/_files/CoreCivic%20Response%20to%20COVID-1.pdf

CoreCivic further provides on the website, in its Statement on COVID-19 Prevention, stating:

> CoreCivic is working hard to protect our employees, those entrusted to our care, and our communities during the COVID-19 pandemic. We have a Coronavirus Medical Action Plan in place at each of our facilities, which we've been working on since January. This plan includes:
>
> - Having medical staff participate in the intake process to identify those who are deemed high-risk of being infected with or contracting COVID-19;
> - Isolating those who are deemed high-risk; and
> - Working with local and state health departments to conduct appropriate testing.
>
> All of our facilities are actively promoting the following three health habits for inmates, detainees and residents, as well as staff: regular hand hygiene, respiratory etiquette (coughing or sneezing into a sleeve or tissue), and avoiding touching one's face.
> **Our health services administrators cooperate fully with local and state health departments, and our protocols mirror local, state and federal recommendations**.
>
> We have asked all our employees to help prevent the spread of COVID-19 and other respiratory diseases by adhering to the following recommendations:
>
> - Avoid close contact with people who are sick.
> - Avoid touching your eyes, nose and mouth with unwashed hands.
> - Stay home when you are sick.
> - Cover your cough or sneeze with a tissue, then throw the tissue in the trash.
> - Clean and disinfect frequently touched objects and surfaces using a regular household cleaning spray or wipe.
> - Follow the CDC's recommendations for using a facemask (medical professionals).
> - Wash your hands often with soap and water for at least 20 seconds, especially after going to the bathroom; before eating and after blowing your nose, coughing or sneezing. [5]

Based on the foregoing, extensive measures have been adopted and set in place to protect Defendant and the community, given COVID-19. As stated by CoreCivic, "Our health services administrators cooperate fully with local and state health departments, and our protocols mirror

---

[5] https://www.corecivic.com/en/corecivic-statement-on-covid-19-prevention (Emphasis added.)

local, state and federal recommendations," and thus contrary to Defendant's claim, CoreCivic has set in place ample measures to deal with the COVID-19 pandemic. The safety of the community and Defendant are being protected by the measures set forth.

    **B.**    <u>RELEASING BEY WOULD PLACE AN UNDUE BURDEN ON THE PRETRIAL SERVICES OFFICE AND THE COURTS</u>

Bey asks to be released subject to home detention. While he argues that doing so will reduce his risk of contracting COVID-19, he fails to acknowledge the increased risk his release would pose to Probation and Pretrial Services Officers. Supervising officers will have to conduct an intake interview, visit a home or homes, and monitor his release. This will require them to enter the community and have regular interactions with him and others at a time when "The Centers for Disease Control and Prevention and other public health authorities have advised the taking of precautions to reduce the possibility of exposure to the virus and slow the spread of the disease. The Governor of the State of Ohio has additionally issued a 'Stay at Home' Order." Amended General Order 2020-05-1, In re: CORONAVIRUS (COVID-19) PUBLIC EMERGENCY (amending General Order 2020-05 on March 23, 2020). Given the strict protocols put in place by the U.S. Marshals and NOCC, there is no reason to believe releasing Bey would reduce his exposure to COVID-19. His release *would*, however, increase the exposure of supervising officers to COVID-19.

Furthermore, in the limited time Bey has been on supervised release, he has demonstrated he will not follow even basic orders such to refrain from using illegal substances, driving without a license, and being in the company of convicted felons. Likewise, the firearm located in the vehicle driven by Bey may be the subject of additional criminal charges. His efforts to tempt the Court with a transfer to another district do not diminish his responsibility for the violations.

8

**III.     CONCLUSION**

For the reasons discussed above, home detention will not protect the public from Bey who in a short time from his release tested positive for narcotics and was found unlawfully driving in a vehicle with a loaded firearm.  He has not demonstrated that he personally is at significant risk of contracting COVID-19 due to his detention.  Further, pretrial release would place a substantial and unwarranted burden on the Pretrial Services Division of the U.S. Probation Office, as well as the Court.  Accordingly, his motion should be denied.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/ Kelly L. Galvin
Kelly L. Galvin (OH: 0062585)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3731
(216) 522-7358 (facsimile)
Kelly.L.Galvin@usdoj.gov